Ernst *v.* Morgan.

## WILSON ERNST et al.

*v.*

## ELI B. MORGAN et al.

A statute provided that, in any county in which the fees &c. allowed county clerks for services should be collected and paid over for the use of the county, it should be lawful to have an assistant clerk, who should be paid by the county collector; that each of the clerks of said counties, whenever the population thereof exceeded sixty thousand, should appoint an assistant clerk, who should possess and exercise all the powers of the county clerk during the latter's absence, and that he should be paid an annual salary of $2,000.—*Held*, that the act was unconstitutional, as being special legislation regulating the internal affairs of a county.

Rule for an injunction.

*Mr. T. B. Harned,* for complainants.

*Messrs. Garrison & French,* for defendants.

THE CHANCELLOR.

This suit is brought to restrain the defendant Eli B. Morgan, the " assistant clerk" of Camden county, appointed under the act entitled "An act creating the office of assistant clerk, and providing a suitable salary therefor, in counties in which the criminal and civil fees of the clerks go to the county collector for the use of the county," approved March 10th, 1885, from receiving, and Morris Hallock, the collector of that county, from paying to him salary as such " assistant clerk." The complainants are citizens, freeholders and tax-payers of the county. The question to be decided is whether the act under which the appointment was made is constitutional. It provides that—

" In any county of this state in which it is now or shall hereafter be provided by law that the fees, costs and compensations allowed clerks for services in the criminal and civil courts, shall be collected and paid over to the col-

Ernst *v.* Morgan.

lector for the use of the county, it shall be lawful to have an assistant clerk, to be paid by said collector of said county ; that each of the clerks of said counties of this state, whenever the population of his said county shall exceed sixty thousand, shall appoint, under his hand and the seal of his office, an assistant clerk, to be known and designated as such, and that said assistant clerk shall be a public officer with a term similar to that of said clerk ; that such assistant clerks shall have and possess all the powers of the county clerk, to be exercised in his absence and under his direction, and that it shall be competent for them to do and perform each and every act that the county clerk is required by law to perform and which he is authorized by law or custom to do or perform."

It also provides that such "assistant clerk" shall be paid the sum of $2,000 per anuum, in equal quarterly payments, by the county collector. It is manifest that this act was designed to effect precisely the same object which the act entitled "A supplement to an act concerning clerks of counties of this state" (*P. L. of 1882 p. 195*) was intended to accomplish. That act was declared by this court to be unconstitutional. *Gibbs* v. *Morgan, 12 Stew. Eq. 126.* It provided that in all counties where the county clerks were, at the passage of the act, paid by annual salary, the deputy clerk should receive the sum of $2,000 per annum, to be paid to him in quarterly payments by the collector of those counties respectively. The office of "deputy clerk" was created by an act of 1876 (*Rev. p. 1278*), which provided that the clerk of each of the counties of this state might appoint an assistant in his office, to be known and denominated as his "deputy clerk," and gave to such deputy power, during the absence or inability of the clerk, to exercise all his powers and perform all his duties, but provided that no additional compensation should be paid to the deputy by the county. The act of 1882 was held to be in contravention of the constitutional prohibition against local or special laws creating, increasing or decreasing the percentage or allowance of public officers during the term for which they were elected or appointed, and against like laws regulating the internal affairs of towns and counties.

The act of 1876 provided for the appointment of an "assistant" to the county clerk, to be denominated "deputy clerk."

The act of 1885 provides for the appointment of such assistant, but denominates him "assistant clerk" instead of "deputy clerk." It is the same officer, but called by a different name. The act of 1876 provided that the deputy clerks should have no compensation from the county. The act of 1882 provided that they should have compensation from the county where the clerk was paid by a salary. As before stated, that act was held unconstitutional. The act of 1885 provides that there shall be an assistant clerk (giving the deputy clerk a new name under color of creating a new office), to be paid out of the county treasury, in counties where the fees &c. go to the county and the population is over sixty thousand. It is admitted that the last-mentioned act applies (as did that of 1882) to Camden county alone. That county is the only one in which the fees are, by law, paid over to the county, and it has a population of over sixty thousand. The act cannot be sustained unless that which is relied upon as a distinguishing characteristic to justify the legislation which, on its face, is partial and not general, is of such a nature as to mark the counties possessing it as peculiarly requiring exclusive legislation. *Richards* v. *Hammer, 13 Vr. 435.* But how does the fact that in a particular county the fees allowed to the clerk for services in the county courts indicate a necessity for the appointment in that county of an assistant clerk, to be paid out of the county treasury? Where those fees are paid into the county treasury, the clerk is paid for those services by a salary, in consideration whereof the fees go to the county. He is bound by law to perform the duties of his office, and if he needs assistance is bound to furnish it. The fact that the fees are paid into the county treasury, obviously is not evidence even of the amount of business done, and it is of itself no reason for requiring the county to pay the salary of an additional officer to assist the clerk in or relieve him from the discharge of official duties which he himself is bound by law to perform. The act itself does not present the characteristic of payment of fees into the county treasury, as being of itself sufficient ground to justify the exclusive legislation, but requires in addition that there be a population of over sixty thousand. The basis of the distinction is not popu-

lation; for, though the population be beyond sixty thousand, the additional officer is not to be appointed unless in that county it is by law provided that the fees &c. be paid into the county treasury. The act is not one providing that where the population is over sixty thousand there shall be an assistant clerk to be paid by the county, but it provides that there shall be such officer, so paid, where the population is over sixty thousand, if in that county the fees &c. go by law to the county, but not otherwise. It is obvious that the controlling characteristic relied upon to justify the legislation is the circumstance that the fees go to the county. The act is clearly within the constitutional prohibition against special legislation regulating the internal affairs of towns and counties. *Freeholders* v. *Stevenson, 17 Vr. 173.* There will be an injunction according to the prayer of the bill.